NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE DEPENDENCY AS TO C.T.

No. 1 CA-JV 26-0072

FILED 07-02-2026

Appeal from the Superior Court in Maricopa County
No. JD536618
The Honorable Jay M. Polk, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm PLLC, Queen Creek
By Steven Czop
*Advisory Counsel for Appellant*

Gary Alan Wieser Attorney at Law, Phoenix
By Gary Alan Wieser
*Guardian Ad Litem for Appellant*

Brodie T., Phoenix
*Appellant*

Arizona Attorney General's Office, Phoenix
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda Adams
*Counsel for Appellee Child*

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Angela K. Paton and Judge Jennifer M. Perkins joined.

C A T L E T T, Judge:

¶1 Brodie T. ("Father") appeals the juvenile court's dependency determination as to C.T. ("Child"). Father's counsel filed a notice and avowal that there is no non-frivolous issue to raise on appeal. Father filed a *pro se* brief. Because Father has not argued that he had good cause for missing the dependency hearing and the record supports the juvenile court's dependency finding, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 We review the facts in the light most favorable to sustaining the court's dependency finding. *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235 ¶ 21 (App. 2005).

¶3 Father is Child's biological parent. In December 2025, Child's Mother went into labor with Child. Because of concerns about Father's behavior, Child's mother did not notify Father that she had given birth to Child, until hours later. When Father arrived at the hospital, medical staff separated him and wife and brought Child to their different rooms. Later at the hospital, family members described Father as exhibiting "erratic and volatile behavior." Father was eventually placed under court ordered psychiatric stabilization where medical staff documented that Father was having "delusions" and "auditory hallucinations[.]" When Wife and Child were discharged from the hospital, they went to Wife's parent's ("Grandparents") home.[1]

¶4 Grandparents petitioned for dependency as to Father, arguing he had "a long history of mental illness" and could not properly care for Child. The juvenile court ordered the Department of Child Safety (the "Department") to investigate. A couple months later, Grandparents requested to be removed from the dependency proceedings. In response,

---

[1] The court also found Child dependent as to Mother. That finding is not before us in this appeal.

the Department filed its own petition, arguing Child was dependent as to Father due to neglect from an "unmanaged mental illness." The Department alleged Father had schizoaffective disorder, bipolar type but refused medication and treatment.

¶5            The juvenile court informed Father that it is important to attend proceedings, and it warned him that if he failed to participate, the court "may deem that you have waived your legal rights and admitted to the allegations made in the petition. Hearings may go forward in your absence and may result in adjudication of dependency[.]" Father attended multiple hearings including one during which the court set the date and time for the dependency hearing.

¶6            But Father failed to attend that hearing. Father's counsel informed the court he had emailed Father to remind him about the hearing, and that Father had replied earlier that day. Counsel did not provide the court with any specifics about Father's response, but he attested that he had no information suggesting Father was detained. The court found there was "no good cause for [Father's] failure to appear" and held the hearing in Father's absence.

¶7            A Department case manager testified that Father denied having mental health issues, was not taking any medication, and Father's decisions created a "safety threat" to Child. The court received evidence of Father's psychological medical records from 2024 and 2026 detailing his schizoaffective disorder, bipolar type diagnosis. A physician in 2026 documented that Father exhibited "paranoid and delusional thought content." The physician also documented that Father denied having any mental health issues and stated he only takes medication when forced. During an exam, Father made "religious delusional statements," including that he believed himself to be "Jesus Christ in the flesh[.]" Father believed his family plotted against him and stated he filed a protective order in response. At the time of discharge, Father presented "with a stable mood and no psychosis." The physician provided Father with a week's supply of medication, and "adamantly" recommended a follow up for both additional medication and counseling. Father responded to the physician that he was interested in getting support through his church.

¶8            The case manager also referenced Department concerns that Father refused to provide Child with "medically appropriate formula" and instead "challenged" Child's lactose intolerance diagnosis. However, one of the formulas Father preferred to give Child was eventually "approved" but not "recommended." The case manager explained Father's pattern of

behavior created a concern that Father would not seek medically appropriate care for Child if a serious injury or illness occurred.

¶9        The court received exhibits from Father's counsel including about Father's veteran's benefits, a letter from Father detailing "restricted consent" to medical staff, and a list of childcare items Father bought.  The case manager also acknowledged reviewing Father's 2020 documents from Veterans Affairs stating that "he did not meet criteria for any cognitive disorder."  Father's counsel asked how Father could neglect Child if Father never had an opportunity to care for Child.  The case manager continued to emphasize that Father's inability to manage his mental health prevented him from safely caring for Child.

¶10        The court found that the Department proved dependency by a preponderance of the evidence because Father has not managed his mental health.  The court took judicial notice of seven mental health cases involving Father.  The court found there were "multiple adjudications" beginning in 2023 and most recently in 2026 showing that Father has a mental health issue.  The court expressed "concern[]" that Father would not acknowledge his mental health issue or treat it.  The court made its dependency determination for two reasons.  One, because Child was only four months old, the court found he was dependent because of Father's "unmanaged mental illness that prevents him from safely parenting [Child]."  Two, Father committed neglect because he was unable to provide Child with "supervision, food, clothing, shelter, or medical care[.]"  The court found Father did not have good cause for failing to appear, so he had "waived his right to contest the allegations contained in the dependency petition."

¶11        Father timely appealed.  We have jurisdiction.  A.R.S. § 8-235(A).

## DISCUSSION

¶12        Father's *pro se* brief argues he did not neglect Child because he has not yet parented Child, and the Department did not specify anything he did wrong.  Father's appeal fails on several grounds.

¶13        First, Father's *pro se* brief does not comply with our rules. Father's brief does not cite to the record or legal authority.  *See* Ariz. R. Civ. App. 13(a)(7); Ariz. R.P. Juv. Ct. 607(b).  Father has therefore waived any argument challenging the dependency determination.  *See In re Aubuchon*, 233 Ariz. 62, 64–65 ¶ 6 (2013); *see also Ramos v. Nichols*, 252 Ariz. 519, 522 ¶ 8

(App. 2022) (we "hold unrepresented litigants in Arizona to the same standards as attorneys and do not afford them special leniency").

¶14 Next, Father fails to explain why he had good cause for not appearing at the dependency hearing. He did not file a motion with the juvenile court to set aside the dependency order. He merely appealed and challenged the merits of the dependency determination. But a parent must demonstrate both good cause for not appearing and a meritorious defense to dependency to set aside a default judgment after the juvenile court proceeds with a dependency hearing in a parent's absence. *See Trisha A. v. Dep't of Child Safety*, 247 Ariz. 84, 89 ¶ 19 (2019); *see also* Ariz. R.P. Juv. Ct. 318(c). By not making any good cause argument, here or in the superior court, Father cannot overcome the court's finding that he "waived his right to contest the allegations contained in the dependency petition."[2]

¶15 Even if Father had not waived any challenge to the dependency determination, we would affirm. We review a juvenile court's dependency determination for an abuse of discretion. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488 ¶ 12 (App. 2015). Dependency must be proven by a preponderance of the evidence. A.R.S. § 8-844(C)(1). The court must make its dependency finding "based upon the circumstances existing at the time of the adjudication hearing." *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50 ¶ 12 (App. 2016). We affirm unless no reasonable evidence supports the finding. *Willie G.*, 211 Ariz. at 235 ¶ 21.

¶16 The court may find a child dependent if adjudicated to be "[i]n need of proper and effective parental care and control and who has . . . no parent . . . willing to exercise or capable of exercising such care and control." A.R.S. § 8-201(15)(a)(i). The definition for neglect includes "[t]he

---

[2] Before conducting a dependency hearing in a parent's absence, the juvenile court must find that the parent had notice, was warned about the consequences of failing to appear, and failed to demonstrate good cause for the absence. Ariz. R.P. Juv. Ct. 338(e). Father does not argue that any failure on the court's part to make such a finding justifies reversal, and thus he has waived the argument. *See Nelson v. Rice*, 198 Ariz. 563, 567 ¶ 11 n.3 (App. 2000) (a party waives an argument by failing to raise it in the opening brief on appeal). Regardless, the record shows Father was aware of the hearing date and had been notified of the consequences for not appearing. The court also permitted Father's counsel to cross examine the case manager, admit exhibits, and present closing argument.

inability or unwillingness of a parent . . . to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes substantial risk of harm to the child's health or welfare[.]" A.R.S. § 8-201(25)(a).

¶17      Father maintains he does not have a mental health issue. But this is precisely one of the reasons for the court's dependency determination. The court heard evidence that Father has received a diagnosis for schizoaffective disorder, bipolar and that around the time of Child's birth, Father exhibited "paranoid and delusional thought content." As the case manager emphasized, and the court found, Father's inability to manage his mental health makes him incapable of properly and effectively caring for Child. Father's continued denials, including his statements that he takes medication only when forced, heighten the concern for Child's safety. The court did not err in adjudicating Child dependent as to Father. *In re L.P.*, 259 Ariz. 548, ___ ¶ 20 (App. 2025) (affirming dependency when parent unable to effectively parent because of an untreated mental illness).

¶18      Father also argues he has an order of protection against his mother-in-law. But that is irrelevant to determining whether there was reasonable evidence supporting dependency.

¶19      Finally, because the court properly found Father was dependent as to Child based on Father's untreated mental health issues, we need not address other reasons the court gave for finding Child dependent.

## CONCLUSION

¶20      We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:      JR